IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Christopher Steward ) | No. CV-15-0578-PHX-JAT (MHB) |
| ) | CR-11-0126-JAT |
| Movant/Defendant, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| United States of America, ) | |
| ) | |
| Respondent/Plaintiff. ) | |
| ) | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

On March 30, 2015, Movant/Defendant Sean Christopher Steward, an inmate currently incarcerated at the Federal Correctional Institution ("FCI"), Anthony, New Mexico, filed a *pro se* Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. §2255 (hereinafter "2255 motion") listing three grounds for relief. (CVDoc. 1; CRDoc. 1444.)[1] On April 22, 2015, the Court dismissed Ground One, and ordered that Respondent file a response to Grounds Two and Three. (CVDoc. 3.) On June 22, 2015, Respondent filed its Response in Opposition to Movant's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. §2255. (CVDoc. 4.) On July 14, 2015, Respondent filed a Reply. (CVDoc. 5.)

---

[1]CVDoc refers to the civil case docket, CV-15-0578, and CRDoc refers to the criminal case docket, CR-11-0126.

**BACKGROUND**

Movant was indicted on January 19, 2011, along with 19 other defendants with various firearms trafficking, drug trafficking, and money laundering counts. The indictment described generally a scheme, beginning in September 2009 through December 2010, in which Movant and his co-conspirators illegally acquired firearms from Federal Firearms Licensees ("FFLs") in Arizona to be shipped, transported and/or exported to drug trafficking organizations both in the United States and in the Republic of Mexico. (CRDoc. 3.) Movant was charged specifically with 10 felony counts: one count conspiracy, one count dealing firearms without a license, five counts making false statement in connection with the acquisition of a firearm (hereinafter "false statement"), one count conspiracy to commit money laundering, and two counts money laundering. (CRDoc. 3.)

On July 18, 2012, Movant pled guilty pursuant to a written plea agreement to Count 1, conspiracy, and Count 38, false statement. (CRDoc. 909.) The plea agreement set forth that "each" count carried a statutory maximum penalty of 5 years in custody. (Id. at 4) (emphasis in original). This was also explained to Movant in open court during his change of plea proceeding. (CRDoc. 973 at 16.) Also, the Government indicated on the record that the prison terms "could be stacked and made consecutive," and that Movant could be sentenced to up to 10 years in prison. (Id. at 19.) Movant indicated his understanding of this possibility, and additionally the fact that no one, including Movant's lawyer and the Government could tell Movant "the precise sentence [he would] receive at the time [of his sentence]." (Id.) In his plea agreement, Petitioner also agreed to give up his right to appeal and collaterally attack his sentence, and acknowledged this during the change of plea proceeding. (CRDocs. 909 at 11; 973 at 12-13.)

The trial court reviewed with Movant the statutory elements of both Counts 1 and 38, as set forth in his plea agreement, which Movant acknowledged he understood, and also confirmed with Movant the facts supporting his guilt on the two counts:

1. Beginning in December 2009, Defendant acted as a "straw purchaser" in acquiring firearms from licensed gun dealers, that is, to illegally acquire himself, when in fact, he was purchasing the firearms on behalf of others.

- 2 -

2.     Beginning in December 2009 and continuing up to and including June 23, 2010, Defendant received over $176,000 in cash (United States Currency) from codefendant Manuel Fabian Celis-Acosta and other coconspirators for use in the illegal straw purchase of firearms.

3.     Beginning in December 2009 and continuing up to and including June 23, 2010, Defendant, acting as a straw purchaser, purchased more than 290 firearms from various Federal Firearms Licensed dealers (FFLs) located in Arizona, which firearms consisted of AK-47 style rifles, 5.7 caliber pistols and a .50 caliber rifle.

4.     In particular, on December 24, 2009, during the course of purchasing 40 AK-47 style firearms from FFL Lone Wolf Trading Company, Defendant knowingly and falsely represented on a Firearms Transaction Record (ATF Form 4473) that he was the actual buyer of the firearms, when, in truth and in fact, he knew that he was not the actual buyer because he was acquiring the firearms on behalf of another person.

5.     Defendant profited from various firearms he purchased and delivered to coconspirator Celis-Acosta and other coconspirators.

6.     During the course of Defendant's involvement in the illegal acquisition of firearms, defendant knew that neither he nor his coconspirators had a license as a firearms dealer, and Defendant knew that dealing in firearms without a license was unlawful.

7.     The firearms, firearms accessories and attachments, and ammunition, referred to in Section X., I. of this Plea Agreement, were all acquired by Defendant or his co-defendants during the course of the conspiracy to illegally acquire firearms in violation of 18 U.S.C. §§922(a)(1) and 924(a)(1)(A), and were involved in or used in knowing violation of Section 924 and willful violation of Section 922.

(CRDocs. 909 at 3-4; 973 at 26-28.)

Movant was sentenced on November 26, 2012. The court found that the applicable advisory guideline range was from 97 to 121 months, based upon an adjusted offense level of 29 and a criminal history category of II. (CRDoc. 974 at 19, 35-36.) The court then sentenced Movant to 60 months' custody on Count 1, and 48 months on Count 38, to run consecutively, for a total of 108 months in prison. (Id. at 36.) The court then confirmed with Movant that he had waived his right to appeal, and found that the waiver was knowingly and voluntarily made. (Id. at 39.)

Movant appealed his conviction and sentence to the Court of Appeals, and, after briefing and oral argument, on April 21, 2014, the Court of Appeals dismissed the appeal for lack of jurisdiction based upon Movant's appeal waiver. (CRDoc. 1267.) On March 20, 2015, Movant filed his 2255 motion. In Ground Two he alleges ineffective assistance of counsel

1 due to trial counsel's "failing to raise issue with the running of [Movant]'s sentence on
2 Counts 1 and 38 consecutive, which is multiplicitous, cumulative and in violation of the
3 double jeopardy clause of the Fifth Amendment, which [] led to a 48 month longer term of
4 imprisonment, prejudicial to Defendant in violation of the Sixth Amendment Right to
5 Counsel."  (CVDoc. 1, at 6.)  In Ground Three Movant claims ineffective assistance of
6 appellate counsel "in failing to appeal the running of [Movant]'s sentence on Counts 1 and
7 38 consecutive to each other," on the basis of the constitutional error identified by Movant
8 in Ground One.  (Id. at 7.)

## ANALYSIS

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

1 conduct." Strickland, 466 U.S. at 690.  "Judicial scrutiny of counsel's performance must be
2 highly deferential."  Id. at 689.

3     If the prisoner is able to satisfy the performance prong, he must also establish prejudice.
4 See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on
5 defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a
6 "reasonable probability that, but for counsel's unprofessional errors, the result of the
7 proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable
8 probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court
9 need not determine whether counsel's performance was deficient before examining whether
10 prejudice resulted from the alleged deficiencies. See Smith, 528 U.S. at 286 n.14. "If it is
11 easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
12 which we expect will often be so, that course should be followed." Id. (quoting Strickland,
13 466 U.S. at 697).

14     The Double Jeopardy Clause of the Fifth Amendment, as it applies to double punishment
15 protects against multiple punishments for the same offense. Albernaz v. United States, 450
16 U.S. 333, 343 (1981).  Movant asserts that his conviction for the substantive count, false
17 statement (Count 38), is also an object of the conspiracy count (Count 1).  Double
18 punishment for a greater offense and a lesser offense that is included in it implicates the
19 Double Jeopardy Clause.  See, Brown v. Ohio, 432 U.S. 161, 168-69 (1977) (cumulative
20 punishments for a greater and lesser included offense is prohibited by the Fifth Amendment).
21 The Supreme Court devised a rule of statutory construction, that governs the determination
22 of when two offenses under separate statutory provisions constitute the "same offense" for
23 double jeopardy purposes, in Blockburger v. United States, 284 U.S. 299 (1932).  "The
24 applicable rule is that where the same act or transaction constitutes a violation of two distinct
25 statutory provisions, the test to be applied to determine whether there are two offenses or
26 only one, is whether each provision requires proof of a fact which the other does not." Id.,
27 at 304. This "same elements" test, "sometimes referred to as the Blockburger" test, is the
28 only test for a double jeopardy bar. United States v. Dixon, 509 U.S. 688, 696 (1993).

Movant pled guilty to, and was sentenced on Counts 1 and 38, which provide as follows:

Count 1: Conspiracy to violate laws of the United States: that is, deal firearms without a license, make false statements in the acquisition of firearms, and smuggle goods from the U.S. (Doc. 3 at 4-5.) The statutory elements of conspiracy are as follows.

    A.    there was an agreement between two or more persons to commit at least one crime as charged in the indictment (as above, dealing firearms without a license, making false statements in the acquisition of firearms, or smuggling goods from the U.S.);

    B.    the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

    C.    one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

18 U.S.C. §371; 9th Cir. Crim. Jury Instr. 8.2 - Conspiracy Elements.

Count 38: Making false statements in connection with the acquisition of firearms. (Doc. 3 at 36.) The statutory elements of this offense are as follows:

    A.    the defendant made a materially false statement or representation in a record that the licensed firearm dealer was required by federal law to maintain;

    B.    the dealer was a federally licensed firearms dealer at the time the offense occurred; and

    C.    the defendant made the false statement with knowledge of its falsity.

18 U.S.C. §924(a)(1)(A); United States v. Abramski, 706 F.3d 307, 316-17 (4th Cir. 2013).

It is clear upon review of the elements of both offenses that the crime of false statements requires the additional element of a false statement and the crime of conspiracy requires proof of a knowing agreement to commit any of the three objects of the conspiracy. Thus, they are not the "same offense" or a greater and lesser-included offense. Additionally, it is well settled that a substantive crime and a conspiracy to commit that substantive crime are not the same offense for double jeopardy purposes. United States v. Arbalaez, 812 F.2d 530, 533-34 (9th Cir. 1987).

> Conspiracy requires proof of an agreement. Aiding and abetting does not require agreement. Thus, conspiracy and aiding and abetting are separate offenses. As conspiracy and aiding and abetting constitute separate offenses, one is not a lesser included offense of the other. Further, the *Blockburger* test is not a rule of constitutional dimension; rather, it is a method for ascertaining Congressional intent. In *Wylie*, we examined the Drug Act in the context of a similar challenge, saying, "[w]e find nothing in either the Act or the legislative history which would indicate that Congress intended to depart from the general rule that courts can impose separate

1    sentences for the conspiracy to commit an offense and the accomplishment of the substantive offense itself."
2    Id. (internal citations omitted).

3    A "mere overlap in proof between two prosecutions does not establish a double jeopardy
4    violation." United States v. Felix, 503 U.S. 378, 386 (1992) "[A] substantive crime and a
5    conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes, .
6    . .the "essence" of a conspiracy offense is the agreement or confederation to commit a
7    crime." Id., at 389-90 (citations omitted). Accord, United States v. Saccoccia, 18 F.3d 795,
8    798 (1994).

9    In his Reply, Movant argues that the elements of Count 38 are in essence "subsumed" in
10   Count 1 because the straw purchase of the firearms is an offense that occurred during the
11   time period of the conspiracy, was one of the objects of the conspiracy, and also required an
12   agreement between two people (Movant and co-defendant Celis-Acosta). (Doc. 5 at 5-7.)
13   Movant argues further that the crime in Count 38 was both an overt act and the object of the
14   conspiracy. (Id. at 8-9.)

15   The conspiracy count in this case charged three objects: dealing in firearms without a
16   license, making false statements in connection with the acquisition of a firearm, and
17   smuggling goods from the United States. (Doc. 3 at 5.) The conspiracy count also charged
18   105 overt acts, four of which alleged Movant's involvement in purchasing firearms on
19   different dates from the Lone Wolf Trading Company and falsely representing that he was
20   the actual purchaser of the firearms. (Id. at 18.)   Movant cites no authority to support his
21   argument that, in his case, the conspiracy and false statement charges against him are the
22   same offense. They clearly have different elements, and the facts admitted to by Movant in
23   his plea agreement highlight this difference: as to the conspiracy, Movant was a "straw
24   purchaser" for others in the conspiracy and received cash from co-defendant Celis-Acosta
25   as well as other coconspirators for the firearms: during the course of the conspiracy Movant
26   purchased more than 290 firearms as a "straw purchaser" in the conspiracy:  all of the
27   firearms, firearms accessories and attachments, and ammunition referenced in Movant's plea
28   agreement, were acquired by Movant and his co-conspirators in furtherance of the objects

- 7 -

of the conspiracy, to include the object of dealing firearms without a license. As to the false statement charge, Movant falsely represented he was buying firearms for himself when in fact he was purchasing the firearms on behalf of another person. (CRDoc. 909 at 3-5).

Clearly, the conspiracy count alleges broader conduct than the false statement charge, as well as an agreement with co-conspirators. Although Movant argues that Count 38 requires proof of an agreement between Movant and co-defendant Celis-Acosta, he is not correct. The elements of the offense do not require it, the count does not allege it, and the factual basis for Movant's plea set forth in Movant's plea agreement does not include it.

Movant cites as support for his arguments U.S. v. Palafox, 764 F.2d 558, 560 (9th Cir. 1985), and U.S. v. Mora, 876 F.2d 76, 78 (9th Cir. 1989). The facts in those cases are distinguishable in that they did not involve a conspiracy count, but involved substantive narcotics offenses. In Palafox, the court ruled that when a defendant distributes a sample of narcotics and then retains the remainder with the intent to immediately distribute to the same recipient, he may be charged with two separate distribution crimes, but may not be punished twice. Palafox, 764 F.2d at 560. In Mora, the court held that the crimes of possession with intent to distribute and importation of narcotics are independent crimes and can be punished separately. Mora, 876 F.2d at 78. And, in Braverman v. U.S., 371 U.S. 49, 53 (1942), also cited by Movant, the Supreme Court determined that the conspiracy is the crime even though it may involve a conspiracy to commit several crimes, and that the "conspiracy is not the commission of the crime which it contemplates." Movant's authority is unpersuasive.

Because the imposition of consecutive sentences on Counts 1 and 38 was constitutional, counsel's failure to object at trial or on appeal did not cause Movant any prejudice, even if he were to demonstrate deficient performance. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

## CONCLUSION

The trial court's imposition of consecutive sentences on Counts 1 and 38 was clearly constitutional, and thus the failure of trial and appellate counsel to object caused Movant no

1  prejudice, even if that failure constituted deficient performance.  Because "the motion and
2  the files and records of the case conclusively show that [Movant] is entitled to no relief," no
3  evidentiary hearing on Movant's 2255 motion is necessary.  28 U.S.C. §2255(b).  The Court
4  will therefore recommend that Movant's Motion to Vacate, Set Aside, or Correct Sentence
5  be denied and dismissed with prejudice.

6  **IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255
7  to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CVDoc. 1 and
8  CRDoc. 1444) be **DENIED and DISMISSED WITH PREJUDICE**;

9  **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to
10  proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a
11  substantial showing of the denial of a constitutional right.

12  This recommendation is not an order that is immediately appealable to the Ninth Circuit
13  Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
14  Procedure, should not be filed until entry of the district court's judgment. The parties shall
15  have fourteen days from the date of service of a copy of this recommendation within which
16  to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a),
17  6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within
18  which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil
19  Procedure for the United States District Court for the District of Arizona, objections to the
20  Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely
21  to file objections to the Magistrate Judge's Report and Recommendation may result in the
22  acceptance of the Report and Recommendation by the district court without further review.
23  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file
24  objections to any factual determinations of the Magistrate Judge will be considered a waiver
25  of a party's right to appellate review of the findings of fact in an order or judgment entered
26  pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil
27  Procedure.

28  DATED this 16th day of December, 2015.

1
2
3
                                              Michelle H. Burns  
                                           United States Magistrate Judge

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28